IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHARLENE JOYNER,** | : | CIVIL ACTION |
| *Plaintiff* | : | |
| | : | |
| v. | : | |
| | : | |
| **OFM, LLC** *et al.*, | : | No. 22-3153 |
| *Defendants* | : | No. 23-707 |

**M E M O R A N D U M**

PRATTER, J.                                                               NOVEMBER 17, 2023

Plaintiff Charlene Joyner was injured after falling forward in an allegedly defective chair manufactured by a Taiwanese company, Kanewell Industries. Kanewell filed a motion to dismiss for lack of personal jurisdiction, arguing that it lacked sufficient contacts with the forum state, Pennsylvania, and merely placed the office chair in a stream of commerce without knowing where it would ultimately arrive. However, documents produced in limited jurisdictional discovery demonstrated that OFM—a furniture distributor with a warehouse in Pennsylvania—had multiple contracts with Kanewell where OFM purchased a significant number of chairs from Kanewell. Those purchase orders specifically call for the chairs to be sent to Pennsylvania, with a final destination of Allentown, Pennsylvania. By conducting systematic business with a distributer in the forum state while knowing that its products had a final destination in Pennsylvania, Kanewell consented to personal jurisdiction in Pennsylvania. Thus, Kanewell's Motion to Dismiss is denied.

**BACKGROUND**

Plaintiff Charlene Joyner alleges that she was working at Temple University Hospital as a floating nurse when, on or about January 23, 2021, she sat on an office chair that skidded out from under her and tipped her forward onto the floor. Ms. Joyner alleges that the chair was sold in a

1

defective and hazardous condition that posed a danger to users where the chair's defective design could cause a user to tip forward and fall.

Ms. Joyner sued multiple defendants in Pennsylvania state court, including Kanewell Industrial Company, a Taiwanese company, that was allegedly involved in the product's supply chain. One of the defendants, OFM, LLC, then removed the case to federal court. Believing it should not be a party in this matter, Kanewell moved to dismiss the complaint for lack of personal jurisdiction, arguing that it does not have sufficient minimum contacts with Pennsylvania to be subject to suit here.

The Court heard oral argument on the Motion to Dismiss and then ordered limited jurisdictional discovery to determine whether this Court has personal jurisdiction over Kanewell. That discovery has been completed. Documents produced in discovery show that Kanewell shipped over 20,000 products directly to Pennsylvania from January 2020 to January 2021, which comprised 17% of its total sales to the United States and 20% of its sales through OFM. Produced documents also include invoices between OFM and Kanewell that show that certain orders were ultimately destined for Allentown, PA, even if they first arrived elsewhere.

## LEGAL STANDARD

In ruling on a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the Court takes the allegations of the complaint as true. *See Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996). However, once a jurisdictional defense is raised, the plaintiff bears the burden of proving, through affidavits or competent evidence, that contacts with the forum state sufficient to establish personal jurisdiction. *Id.* Once the plaintiff makes out a prima facie case in support of personal jurisdiction, the burden shifts to the defendant to establish that some other considerations exist which would render the exercise of personal jurisdiction unreasonable. *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 150 (3d Cir. 1992).

There are two types of personal jurisdiction: either general or specific. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007). General personal jurisdiction requires that the defendant have "continuous and systematic" contacts with the forum state. *Id*. Specific jurisdiction involves a three-part test. *Id*. "First, the defendant must have 'purposefully directed [its] activities' at the forum." *Id*. (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). "Second, the litigation must 'arise out of or relate to' at least one of those activities." *Id*. (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984); *Grimes v. Vitalink Commc'ns Corp.*, 17 F.3d 1553, 1559 (3d Cir. 1994)). "And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise comport[s] with fair play and substantial justice." *Id.* (citing *Burger King*, 471 U.S. at 476) (internal quotation marks omitted).

### DISCUSSION

#### I. General Jurisdiction

Traditionally, a court has general personal jurisdiction only where the defendant has "continuous and systematic" affiliations with the forum such that the company is essentially "at home" in the forum State. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (citing *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

Here, Ms. Joyner argues, in part, that the recently decided *Mallory v. Norfolk Southern Railway Co.*, 600 U.S. 122 (2023), controls and stands for the proposition that Kanewell's "continuous and systematic contacts with Pennsylvania" are sufficient to find jurisdiction. Doc. No. 27, at 4. However, in *Mallory*, the Supreme Court upheld a Pennsylvania statute that permits Pennsylvania courts to "exercise general personal jurisdiction" over a registered foreign corporation. 600 U.S. at 134. It is not clear that Kanewell has registered as or qualifies as a foreign corporation in Pennsylvania. However, this additional path to finding jurisdiction as outlined in *Mallory* is not operative here because the Court has specific personal jurisdiction over Kanewell.

3

## II. Specific Jurisdiction

"At the threshold, the defendant must have 'purposefully avail[ed] itself of the privilege of conducting activities within the forum.'" *O'Connor*, 496 F.3d at 317 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). "[W]hat is necessary is a deliberate targeting of the forum." *Id.* "[E]fforts to exploit a national market that necessarily included Pennsylvania are insufficient" to find personal jurisdiction. *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 780 (3d Cir. 2018) (internal citations omitted). The defendant's contacts with the forum state "must show that the defendant deliberately 'reached out beyond' its home—by, for example, 'exploit[ing] a market' in the forum State or *entering a contractual relationship centered there*." *Ford Motor Co. v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017, 1025 (2021) (quotation omitted) (emphasis added).

In *Shuker*, the Court of Appeals for the Third Circuit dismissed the plaintiffs' stream-of-commerce theory of personal jurisdiction when the factual allegations averred only that a parent company sold its products through another company in Pennsylvania "as part of its efforts to sell products in the United States generally—not in Pennsylvania specifically." *Id.* And the Supreme Court has made clear that "it is the defendant's *actions*, not his expectations, that empower a State's courts to subject him to judgment." *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 883 (2011) (emphasis added).

Here, Kanewell argues that *Shuker* and *Asahi Metal Industry Co. v. Superior Court of Cal., Solano Cty.*, 480 U.S. 102 (1987), stand for the proposition that a foreign defendant does not avail itself of the forum state's market "(i) by selling products to a customer domiciled in the forum state where the customer controls the distribution scheme for selling the product nationally, or (ii) by shipping product to a port or warehouse located in the forum state where the customer controls the distribution scheme for selling the product nationally."

*Shuker*, however, made clear that the key issue is whether there was deliberate targeting of the forum. 885 F.3d at 780. Unlike in *Shuker*, where the plaintiffs pled only that the parent company sold its products in the United States generally, in this case, Ms. Joyner pleads that Kanewell regularly does business in the Commonwealth of Pennsylvania. Compl. ¶ 3. Jurisdictional discovery revealed that Kanewell did not merely send chairs as a one-off sale to Pennsylvania for those chairs to then be added to the stream of commerce. Instead, it revealed that 17% of Kanewell's total sales were shipped *directly* to Allentown. Doc. No. 27 ¶ 7. Kanewell also shipped some 20,273 products directly to Allentown in that one-year period. *Id.* Additionally, myriad invoices stated that Kanewell shipments had a "FINAL DESTINATION" of Allentown, PA. *See, e.g.*, Doc. No. 25-3, at 8. Based on the allegations and documents produced in jurisdictional discovery, Kanewell was *specifically* shipping its products directly to Pennsylvania to be sold in Pennsylvania. Thus, unlike the defendant in *Shuker*, Kanewell is not treating Pennsylvania as a mere waypoint for its products.

Kanewell next argues that even if its activities were purposefully directed at Pennsylvania, Ms. Joyner's claims do not "arise out of or relate to" Kanewell's contacts with Pennsylvania because the chair in question was shipped through OFM's North Carolina warehouse, not Pennsylvania. However, Ms. Joyner was not sitting in a unique chair custom built in North Carolina for her or for Temple University Hospital that was then brought into Pennsylvania. Instead, she allegedly sat in a commodity chair with a defective design that Kanewell sent not only to North Carolina, but also to Pennsylvania as part of Kanewell's business. In other words, Kanewell had sent such a high number of units of the same chair with the same alleged defective design with a final destination of Allentown, Pennsylvania, that it does not matter that the single chair in question that Ms. Joyner purchased was first shipped to North Carolina and then on into

Pennsylvania because of its commodity nature and the notable sales volume that Kanewell derived from shipments to Pennsylvania.

The Supreme Court's decision in *Ford Motor Co. v. Montana Eighth Judicial District Court* is instructive. There, Ford argued that the forum court had no jurisdiction over the company because Ford neither sold the car in question in the forum state nor designed and manufactured the vehicle in the forum state. *Ford*, 141 S. Ct. at 1026. But the Court held that "none of [its] precedents has suggested that only a strict causal relationship between the defendant's in-state activity and the litigation will do." *Id.* "And indeed, [the Supreme Court] has stated that specific jurisdiction attaches in cases identical to the ones here—when a company like Ford serves a market for a product in the forum State and the product malfunctions there." *Id.* at 1027. Like in *Ford*, here, "there is a strong 'relationship among the defendant, the forum, and the litigation'—the 'essential foundation' of specific jurisdiction." *Id.* at 1028 (quoting *Helicopteros*, 466 U.S. at 414). That is because Kanewell, the defendant, sold a significant number of chairs with a "final destination" of Pennsylvania, the forum, and the exact type of allegedly defective chair led to this litigation.

The incident at issue here is "related to" Kanewell's contact with Pennsylvania because Kanewell allegedly sent the same type of defective chair directly into Pennsylvania through its direct, purposeful contact with Pennsylvania. The Supreme Court voiced the very concern that jurisdiction in a case like this should not "ride on the exact reasons for an individual plaintiff's purchase, or on his ability to present persuasive evidence about them." *Id.* at 1029. Like in *Ford*, "the 'relationship among the defendant, the forum, and the litigation'[] is close enough to support specific jurisdiction." *Id.* at 1032 (quotation omitted). Thus, the Court finds that it has specific jurisdiction over Kanewell.

## CONCLUSION

For the foregoing reasons, the Court denies Kanewell's Motion to Dismiss.

BY THE COURT:

<u>s/ Gene E.K. Pratter</u>
**GENE E.K. PRATTER**
**UNITED STATES DISTRICT JUDGE**